UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**UNITED STATES OF AMERICA**

**versus**                                                               Case No. 6:15-cr-199-Orl-40GJK

**ROSS EDWARD PAULSON**
_____/

**DEFENDANT'S SENTENCING MEMORANDUM**

ROSS EDWARD PAULSON ("MR. PAULSON") through his undersigned counsel respectfully submits information addressing what punishment is sufficient and not more than necessary under 18 U.S.C. § 3553(a):

**PROCEDURAL BACKGROUND**:  A one-count Indictment charged MR. PAULSON with attempting to entice a person under the age of 18 to engage in sexual activity in violation of 18 U.S.C. §2422(b). (Doc 1).  MR. PAULSON timely entered into a written plea agreement (Doc 24) and pled guilty before the Honorable Magistrate Judge Gregory Kelly. (Doc 33).  This Court accepted the guilty plea and adjudicated guilt on November 20, 2015. (Doc 37).  MR. PAULSON did not apply for release from detention (Doc 5) and he has therefore continuously remained in custody since his arrest on September 9, 2015. (Doc 12).  Sentencing is set for February 24, 2016.

**ANALYSIS UNDER THE ADVISORY[1] SENTENCING GUIDELINES**: The Presentence Investigation Report ("PSR") without objection reflects a **Total Offense Level of 29** and **Criminal History Category I** and a sentencing range of **87 to 108 months**. (Doc 43, ¶63). However, because that range is less than the 120 month statutory minimum required by 18 U.S.C. §2422(b), the advisory Guideline sentence becomes 120 months under USSG §5G1.1(b). (Doc 43, ¶63).

**ANALYSIS UNDER 18 U.S.C. §3553(A)**: The Court must first consider "the nature and circumstances of the offense and the history and characteristics of the defendant" to determine a sentence that is "sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection" as part of its analysis under 18 U.S.C. § 3553(a). Here, the statutorily-mandated 120 month term of imprisonment is enough punishment for this offender and for this offense.

---

[1] **FEDERAL SENTENCING OVERVIEW**: In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738 (2005), the Supreme Court invalidated the statutory provision that made the United States Sentencing Guidelines ("Guidelines") mandatory. The Court thereafter confirmed that "[a]s a result of our decision [in *Booker*], the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are 'reasonable.' Our explanation of 'reasonableness' review in the *Booker* opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions." *Gall v. United States*, 552 U.S. 38, 45 128 S.Ct. 586, 594 (2007). The Court thus established the contours of federal sentencing. Simply said, the Guidelines are advisory only. Their directives must be considered as part of a reasoned sentencing analysis that is otherwise and none-the-less controlled by 18 U.S.C. § 3553(a) requiring that the sentence imposed must be "sufficient, but not greater than necessary" to comply with the goals of sentencing.

**THE CIRCUMSTANCES OF THIS OFFENSE** are not overly aggravated. MR. PAULSON on July 21, 2015, responded to an ad placed on Craigslist by law enforcement. He communicated with police over the internet and was arrested two days later without incident when he arrived to meet a purported father and his fictitious 13 year-old daughter to engage in sexual activity. When arrested MR. PAULSON admitted all elements of the offense and explained that each communication increased excitement and pulled him further into the crime.

What happened here is typical of other undercover operations conducted by law enforcement. *See*, e.g., **United States v. Lanzon**, 639 F.3d 1293 (11th Cir. 2011) (Offender convicted by jury of violating 18 U.S.C. §2422(b) received the then-mandatory 60 month[2] minimum term of imprisonment for attempting to entice a 14 year-old fictitious minor girl to engage in sexual activity in 2005); **United States v. Lecuyer**, 545 Fed.Appx. 874 (11th Cir. 2013) (120 month mandatory minimum sentence affirmed following conviction for attempted enticement of 13 year-old girl to engage in sexual activity with recommended Guidelines range between 97-121 months). Simply said, the mandatory 120 months of imprisonment in those cases was found to adequately punish similar criminal activity. It is sufficient here.

---

[2] The 60 month mandatory minimum doubled to 120 months due to passage of the Adam Walsh Child Protection and Safety Act of 2006. *See* Pub.L. 109-248, title II, section 203, July 27, 2006, 120 Stat. 613.

The relatively short duration of the criminal activity here likewise does not weigh in favor of deviating from the guidelines. An advertisement was placed by law enforcement on July 21, 2015, and MR. PAULSON was arrested on July 23, 2015, two days later. That span of activity is less than the five days involved in <u>**United States v. Hardy**</u>, 520 Fed.Appx 835 (11th Cir. 2013) where a defendant convicted by jury of violating 18 U.S.C. §2422(b) communicated with an undercover officer for a period of five days before driving to Florida from Georgia to engage in sexual activity, and the 120 month sentence imposed there was deemed sufficient to punish the criminal activity. Unlike Mr. Hardy, MR. PAULSON here immediately waived his Miranda rights and accepted full responsibility. (Doc 43, ¶ 13-15).

**THE HISTORY AND CHARACTERISTICS OF THIS FIRST-TIME OFFENDER** weigh in favor of leniency. A polygraph[3] (**Exhibit 1**) supports MR. PAULSON's statement contained in his response to the Craigslist advertisement that he "[n]ever did this before." (Doc 24, p.19). Now 60 years-old, he is a first-time offender with no arrests prior to this offense. (Doc 43, ¶¶ 32-36). The lack of *any* criminal history whatsoever is recognized by statutes and the sentencing guidelines as a valid basis for leniency. *See*, e.g., 18 U.S.C. § 3553(f)(1) ("Safety Valve" component in drug offense requires that "the defendant does not have more than 1

---

[3] MR. PAULSON showed no deception in answering "no" when asked, "As an adult, have you ever sexually touched anyone under 18 years-old." (Exhibit 1).

- 4 -

criminal history point"); USSG §5K2.20 (c)(4) ("Aberrant Behavior" downward departure precluded if the defendant has more than one criminal history point, a prior state or federal conviction, or any other significant prior criminal behavior).

The sentencing Guidelines factor in an offender's prior criminal record to reach the appropriate sentencing range using a level-1 criminal history, and the recommended range here would be 87-108 months but for the 120 month statutory mandatory minimum.  It is also worth noting that a level one criminal history can be achieved by offenders who have arrests and/or convictions that do not qualify to be scored as a "prior sentence" under USSG § 4A1.2.  MR. PAULSON has no such arrests or convictions.

His advanced age and medical issues[4] also support leniency.  At 60 years old, he will be 70 years old at the conclusion of a 120 month sentence. He must thereafter be supervised for at least 5 years as required by 18 U.S.C. §3583(k).  In addition to direct supervision on supervised release, MR. PAULSON will have to register under 18 U.S.C. § 2250 as a sexual offender and be monitored under the Sexual Offender and Notification Act[5] and by state agencies for the rest of his life. Many of the requirements imposed by state governments are onerous, such as living and employment restrictions that curtail exposure to children.

---

[4] MR. PAULSON has for years suffered chronic joint and muscle pain and is prescribed medications to manage the pain. (Doc 43, ¶51).

[5] Title 1 of the Adam Walsh Child Protection and Safety Act of 2006 (P.L. 109-248).

His letter to the Court (**Exhibit 2**) shows genuine regret, and the letters from family and friends who are unable to attend sentencing describe a hard-working man who consistently put aside his own physical pain to help others in need. For instance, his elderly mother describes the physical and verbal abuse suffered by MR. PAULSON at the hands of his alcoholic father and notes that her son "was never too busy to help me over these past 16 years since his father passed." She recalls that "Ross called me shortly before his arrest took place and told me that he was in so much pain that he had been flat on his back for 3 days" and confirms that he "has had several back and shoulder surgeries, including a shoulder replacement, and has been in pain for several years." (**Exhibit 3**).

MR. PAULSON's wife of eight years offers that "Ross made many efforts to be a strong community member and teach young carpenters his trade. He has taken on apprentices from difficult backgrounds, provided transportation for some of his employees, and earned professional recognition from building associations, to mention a few." (**Exhibit 4**). She is aware of the physical pain her husband has suffered for years and asks that his lack of prior record, reputation as a respectable businessman and selfless heart be considered, and believes that, "by the time he is released, he will be a broken man, and no menace to society." The advanced age of MR. PAULSON when released from BOP custody weighs in favor of leniency.

His wife's mother, who also lives in Wisconsin, writes that MR. PAULSON "has volunteered and given of his time beyond the job throughout his life. For

example, many years ago he drove a coach bus for missions trips into Mexico. While working for a troubled boys home in Augusta, WI, he took boys out on wilderness trips in northern Wisconsin/Minnesota to build character and cooperation skills." (**Exhibit 5**). She, too, is "aware of his two shoulder surgeries and that he has been dealing with pain management for several years. He continued to try to work again as soon as possible and finish projects for all of us. In general, he should have been allowing himself more healing time than he did, but wanted to do all he could for us."

The younger brother who grew up in the same home achieved an Honorable Discharge from the Coast Guard and went on to serve as a police officer for over 32 years, and he credits much of his success to his older brother: "Our father would frequently abandon the family for long periods of time, leaving our mother to raise three children on her own. These absences occurred from the time I was 8 years old until the time I finished high school. While our father was gone, my older brother filled in those areas of life which a father would normally be expected to teach their sons. I learned to hunt and fish, to shave and to drive and repair a car from my brother. He and I engaged in our first jobs together from selling homemade candles to shoveling snow in northern Wisconsin. In my ways my brother's example while growing up was much more impactful on my development [than] my father's was." (**Exhibit 6**).

Their younger sister also writes of her brother's exemplary past, provides specific references of his assistance to others and poignantly observes that, "Ross has had surgeries to his back and shoulder, was diagnosed with fibromyalgia several years ago and his health is suffering; both he and my mother are dealing with the horribly sad fact that they may never see each other again." (**Exhibit 7**). MR. PAULSON's father-in-law is a medical doctor who confirms the reports of others: "Our experience with Ross has been a son-in-law who is thoughtful to others and is willing to give a helping hand whenever it is needed." (**Exhibit 8**).

The accolades are not limited to family. For instance, 82 year-old Florence Roberts, a mother of three, grandmother of five and great-grandmother of six, has seen MR. PAULSON's skill as "an accomplished rough and finish carpenter" with "excellent interior decorating talents" and provides examples of his kindness and friendship to her, such as allowing her to spend a week at his home to be closer to her granddaughter. Mrs. Roberts writes, "He became a good friend of mine and I believe he is a caring man and a credit to our society." (**Exhibit 9**). Similarly, Peggy Skuse, the mother of seven, grandmother of twenty-three and great-grandmother of eight, writes that she was "very shocked" to hear what happened because it "just seems so out of character for the man I knew." (**Exhibit 10**). She writes that, "I know of many relatives whom he has helped with his remodeling skills. I hope that you see Ross as the person I know and have come to appreciate as a good son and a good community person."

The import of these letters is that MR. PAULSON has solid support that will help with his transition into the community when released from the Bureau of Prisons. The characteristics of this elderly, first-time offender do not call for punishment over the 120 months mandated by statute. A person who has never before experienced incarceration will be greatly affected by his first term of imprisonment. *See **United States v. Qualls**,* 373 F.Supp.2d 873, 877 (E.D.Wis. 2005) ("Generally, a lesser period of imprisonment is required to deter a defendant not previously subject to lengthy incarceration than is necessary to deter a defendant who has already served serious time yet continues to re-offend."). Neither society nor a repentant first-time offense such as MR. PAULSON benefits from costly imprisonment that is any longer than necessary to achieve the goals and policies of sentencing under 18 U.S.C. § 3553(a).

In that regard, the 120 month mandatory minimum sentence **reflects the seriousness of the offense, promotes respect for the law and provides a just punishment for an offense** that did not cause actual injury to any person. Respect for the law contemplates imposition of a just sentence that is enough under the circumstances of the crime that occurred, and those circumstances here weigh do not warrant a sentence exceeding the 120 month sentence recommended by the Guidelines. The ten-year mandatory minimum penalty achieves all of the foregoing policies, whereas additional imprisonment needlessly expends finite public resources that are better used to confine younger offenders who have a

history of engaging in violent crimes and drug abuse. The ten-year statutory minimum is designed to **provide adequate deterrence** and to **protect the public from further crimes committed** by offenders who have criminal histories. Deterrence can also be accomplished through the mandatory supervised release. There is no restitution to be paid. "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall v. United States*, 552 U.S. 45, 52, 128 S.Ct. 586, 598 (2007). The 120 month mandatory minimum is a sufficient punishment here.

**REQUESTED RECOMMENDATION**: MR. PAULSON's wife, family members and friends reside in Wisconsin as shown by the letters provided to the Court. He respectfully asks the Court to recommend to the Bureau of Prisons that confinement be at a facility in Wisconsin or Minnesota so that he will be close to his family so that rehabilitation will be enhanced by their support and visitation. See *United States v. Hayes*, 535 F.3d 907, 910 (8th Cir. 2008) ("While nothing prevents the sentencing judge from making recommendations to the BOP, the determination of the commencement date and the designation of the place at which the sentence is to be served remains with the BOP.").

## CONCLUSION

The 120 month term of imprisonment required by statute is sufficient under 18 U.S.C. §3553(a). This Court is asked to recommend that the BOP confine MR. PAULSON in Wisconsin or Minnesota to accommodate family support.

    Respectfully submitted,

    Donna Lee Elm
    Federal Defender

    *Larry B. Henderson*
    Larry B. Henderson
    Assistant Federal Defender
    201 S Orange Avenue, Suite 300
    Orlando, Florida 32801
    Telephone: (407) 648-6338
    Fax: (407) 648-6095
    Email: larry_henderson@fd.org
    Counsel for ROSS PAULSON

## CERTIFICATE OF SERVICE

**I CERTIFY** the foregoing was electronically filed with the Clerk of Court using the CM/ECF system that will send a notice of electronic filing to Assistant United States Attorney Kara Wick this 18th day of February, 2016.

    */s/ Larry B. Henderson*
    Attorney for Defendant
    Assistant Federal Defender
    Florida Bar Number 0353973
    201 South Orange Avenue, Suite 300
    Orlando, Florida 32801
    Telephone 407-648-6338
    Facsimile 407-648-6095
    E-Mail:larry_henderson@fd.org